UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

| | |
|---|---|
| Tao J.,<br><br>    Petitioner,<br><br>v.<br><br>Secretary of Department of Homeland Security; Jefferson Sessions, Attorney General; Scott Baniecke, ICE Field Office Director; and Kurt Freitag, Freeborn County Sheriff,<br><br>    Respondents. | Case No. 18-cv-1845 (NEB/HB)<br><br>**REPORT AND RECOMMENDATION** |

Tao J., Carver County Jail, 606 East Fourth Street, Chaska, MN 55318, *pro se*

Ana H. Voss and Ann M. Bildtsen, United States Attorney's Office, 300 South Fourth Street, Suite 600, Minneapolis, MN 55415, for Respondents Secretary of Department of Homeland Security, Jefferson Sessions, and Scott Baniecke

David John Walker, Freeborn County Attorney's Office, 411 South Broadway Avenue, Albert Lea, MN 56007, for Respondent Kurt Freitag

HILDY BOWBEER, United States Magistrate Judge

   On June 12, 2018, Petitioner Tao J. filed a Petition for a Writ of Habeas Corpus under 28 U.S.C. § 2241 challenging his custody by U.S. Immigration and Customs Enforcement ("ICE"). (Pet. [Doc. No. 1].) Petitioner seeks to be released pending the resolution of an appeal taken by the Department of Homeland Security ("DHS") to a

grant of asylum by an immigration judge ("IJ").  (*See id.* at 6, 8.) [1]  As set forth below, the Court recommends that the Petition be granted in part and denied in part.

## I. Background and Procedural History

Petitioner, a citizen and national of China, entered the United States on December 9, 2009, on a student visa.  (Ligon Decl. Ex. 1 at 1-3 [Doc. No. 6-1].)  His status was adjusted to legal permanent resident on June 10, 2015.  (*Id.* at 3.)  On January 23, 2018, Petitioner was convicted of possessing more than ten pounds of marijuana, in violation of South Dakota Codified Law 22-42-6.  (*Id.*)  He was committed to ICE custody on January 31, 2018.  (*Id.*)  Petitioner asked to be released on bond, but the IJ denied the request and found he was subject to mandatory detention under 8 U.S.C. § 1226(c).  (Ligon Decl. Ex. 4 [Doc. No. 7-4].)  An order for mandatory detention pursuant to INA § 236(c) was issued on February 20, 2018.  (*Id.*)

On April 27, 2018, an IJ granted Petitioner's application for asylum.  (Ligon Decl. Ex. 5 [Doc. No. 6-5], Ex. 7 at 83–100 [Doc. No. 6-7].)  The IJ found that, although Petitioner was "removable" (which Petitioner conceded), Petitioner was a refugee; Petitioner demonstrated past persecution based on religion and a well-founded fear of future persecution; and the DHS failed to rebut Petitioner's showings.  (Ligon Decl. Ex. 7 at 84, 96–100.)  The IJ also determined that Petitioner's underlying conviction was not an "aggravated felony" or "particularly serious crime" that would bar asylum.  (*Id.* at 94–95.)  Contrary to Respondents' position (Resp'ts' Resp. at 2 [Doc. No. 5]), the IJ did not

---

[1]  The Court cites to the page numbers assigned by the CM/ECF system.

order Petitioner removed (*see* Ligon Decl. Ex. 5).

The DHS appealed the IJ's decision to the Board of Immigration Appeals ("BIA") on May 18, 2018. (Ligon Decl. Ex. 6 [Doc. No. 6-6].) The BIA issued a briefing schedule, which provided that all briefing must be submitted by July 13, 2018. (Ligon Decl. Ex. 7.) To the Court's knowledge, that appeal remains pending.

Through the § 2241 habeas petition filed in this Court, Petitioner asks to be released while the BIA considers the DHS's appeal of the IJ's grant of asylum. (Pet. at 6, 8.) He alleges that his continued detention violates due process and the Eighth Amendment. (Pet. at 6, 8.)

Respondents contend that Petitioner is properly detained pending a final order of removal and that his detention is mandatory under 8 U.S.C. § 1226(c). They note that Petitioner has been in ICE custody about nine months, since January 31, 2018. Respondents make note of the grant of asylum in their response, but they do not specifically address how the grant of asylum or the DHS's appeal affect the reasonableness of Petitioner's detention. (*See* Resp'ts' Resp. at 2, 16.)

In Petitioner's reply, he argues that the grant of asylum is a change in circumstances that warrants his immediate release or at least a bond hearing. He cites a 2004 memorandum from ICE Assistant Secretary Michael J. Garcia to ICE Deputy Executive Associate Commissioner Anthony Tangeman, stating, "[i]n general, it is ICE policy to favor release of aliens who have been granted protection relief by an immigration judge, absent exceptional concerns such as national security issues or danger to the community and absent any requirement under law to detain." Garcia Mem.,

3

*Detention Policy Where an Immigration Judge Has Granted Asylum and ICE Has Appealed* (Feb. 9, 2004).

## II.  Discussion

A writ of habeas corpus enables a person detained by the government to challenge the legality of his confinement and, if successful, obtain his release. *Preiser v. Rodriguez*, 411 U.S. 475, 485 (1973). The right to petition for habeas relief is a foundational legal principle in the American system, *see* U.S. Const. art. 1 § 9, and has been recognized as "an integral part of our common-law heritage," *Preiser*, 411 U.S. at 485. Relevant here, 28 U.S.C. § 2241 confers jurisdiction upon federal courts to hear habeas challenges to the lawfulness of immigration-related detentions, *Zadvydas v. Davis*, 533 U.S. 678, 687 (2001), but a court's jurisdiction to do so is limited. 8 U.S.C. § 1226(e); *see also Demore v. Kim*, 538 U.S. 510, 517 (2003). This Court may not review a discretionary decision made by immigration authorities, such as the decision to order that a noncitizen be removed to another country. It may, however, review immigration-related detentions to determine if they comport with the demands of the Constitution. *Zadvydas*, 533 U.S. at 688. Accordingly, the Court's task is not to second-guess decisions made within the discretion of an immigration authority, but to assess the constitutional permissibility of the detention itself. *See Davies v. Tritten*, No. 17-cv-3710 (SRN/SER), 2017 WL 4277145, at *2 (D. Minn. Sept. 25, 2017).

### A.  **Relevant Law Governing Petitioner's Detention**

Petitioner is subject to mandatory detention under 8 U.S.C. § 1226(c)(1)(B), which requires the Attorney General to "take into custody any alien who . . . is deportable by

reason of having committed any offense covered in section 1227(a)(2)(A)(ii), (A)(iii), (B), (C), or (D) of this title." Unlike non-criminal aliens, individuals detained pursuant to § 1226(c) may not be released, except in narrow circumstances that are not applicable here. *See* 8 U.S.C. § 1226(c)(2).[2] Detention under § 1226(c) "necessarily serves the purpose of preventing deportable criminal aliens from fleeing prior to or during their removal proceedings, thus increasing the chance that, if ordered removed, the aliens will be successfully removed." *Demore*, 538 U.S. at 527–28. However, § 1226(c) "does not on its face limit the length of the detention it authorizes." *Id.*

The Supreme Court has not held that detentions under § 1226(c) lasting longer than six months require the government to justify their continuance. In *Demore*, the Supreme Court reversed a decision by the Ninth Circuit Court of Appeals holding that § 1226(c) was unconstitutional on its face because it authorized detention but provided no mechanism to challenge the basis for detention. The Supreme Court affirmed the legality of the petitioner's six-month detention under § 1226(c), finding that his detention was

---

[2] The narrow circumstances for release described in § 1226(c)(2) are:

> The Attorney General may release an alien described in [§ 1226(c)(1)] only if the Attorney General decides pursuant to section 3521 of Title 18 that release of the alien from custody is necessary to provide protection to a witness, a potential witness, a person cooperating with an investigation into major criminal activity, or an immediate family member or close associate of a witness, potential witness, or person cooperating with such an investigation, and the alien satisfies the Attorney General that the alien will not pose a danger to the safety of other persons or of property and is likely to appear for any scheduled proceeding. A decision relating to such release shall take place in accordance with a procedure that considers the severity of the offense committed by the alien.

5

reasonably related to removal and was for a short period of time. 538 U.S. at 526–31. The Court noted that the Due Process Clause does not require the government to employ the least burdensome means when removing deportable aliens and that "[d]etention during removal proceedings is a constitutionally permissible part of that process." *Id.* at 528, 531. In addition, the Court emphasized that detentions pending removal proceedings under § 1226(c) do not raise the same constitutional concerns as § 1231 post-final-removal-order detentions because the former typically last for a much shorter period of time. *Id.* at 530 (noting detentions under § 1226(c) last "roughly a month and a half in the vast majority of cases" and "about five months in the minority of cases in which the alien chooses to appeal"). Thus, the majority held, the petitioner's six-month detention to secure his attendance at removal proceedings did not offend the Constitution, but the majority declined to comment on whether a longer detention under § 1226(c) would raise constitutional concerns. However, Justice Kennedy noted in his concurrence that "were there to be an unreasonable delay by the [government] in pursuing and completing deportation proceedings, it could become necessary then to inquire whether the detention is not to facilitate deportation, or to protect against risk of flight or dangerousness, but to incarcerate for other reasons." *Id.* at 532–33 (Kennedy, J., concurring).

Interpreting *Zadvydas* and *Demore*, several federal courts of appeals—citing the canon of constitutional avoidance—construed § 1226(c) to include a reasonableness limitation on the length of time that an alien could be detained. *See, e.g.*, *Reid v. Donelan*, 819 F.3d 486 (1st Cir. 2016), *withdrawn*, *Reid v. Donelan*, No. 14-1270, 2018 WL 4000993 (1st Cir. May 11, 2018); *Sopo v. U.S. Att'y Gen.*, 825 F.3d 1199 (11th Cir.

2016), *vacated*, *Sopo v. U.S. Att'y Gen.*, 890 F.3d 952 (11th Cir. 2018); *Rodriguez v. Robbins*, 804 F.3d 1060 (9th Cir. 2015), *overruled by Jennings v. Rodriguez*, 138 S. Ct. 830 (2018); *Lora v. Shanahan*, 804 F.3d 601 (2d Cir. 2015), *cert. granted*, *vacated*, *Shanahan v. Lora*, 138 S. Ct. 1260 (2018).

Earlier this year, in *Jennings*, the Supreme Court revisited the constitutionality of detentions under § 1226(c) and rejected the analysis utilized by the various circuits in the above decisions. 138 S. Ct. at 836. The case involved a class of non-citizens detained by immigration authorities under § 1226(c) and other detention statutes for periods lasting longer than six months. *Id.* at 838. The class sought and obtained from the district court an injunction requiring immigration authorities to hold individualized bond hearings for each class member to assess whether the government was justified in continuing their detention. *Id.* Applying the constitutional avoidance doctrine and relying on the reasoning of *Zadvydas*, the Ninth Circuit interpreted § 1226(c) to contain an implicit six-month time limit on the length of mandatory detention and upheld the requirement that detainees be provided individualized bond hearings after six months of detention. *Id.* at 842, 846.

The Supreme Court reversed, finding that the Ninth Circuit misapplied the constitutional avoidance doctrine. *Id.* at 842. The Court noted that § 1226(c) was clear on its face that persons detained under the statute could only be released for witness-protection purposes. *Id.* at 846. Therefore, the constitutional avoidance doctrine could not be used to reinterpret the statute to impose a six-month time limit on mandatory detentions. *Id.* at 842 (explaining the "canon of constitutional avoidance comes into play

only when, after the application of ordinary textual analysis, the statute is found to be susceptible of more than one construction."). Without commenting on the constitutionality of the detentions at issue in the lawsuit, the Court remanded the case for further consideration. In doing so, the Court determined that a six-month *per se* rule of reasonableness was not supported by the text of § 1226(c), but stopped short of assessing whether and to what extent a prolonged detention under § 1226(c) would exceed constitutional bounds. *Id.* at 847. Thus, the constitutionality of prolonged detentions under § 1226(c) remains an open question.

Various circuit courts of appeals have wrestled with that question. Prior to *Jennings*, the Second and Ninth Circuits held that under § 1226(c), detentions longer than six months were *per se* unreasonable. *See Rodriguez*, 715 F.3d at 1138; *Lora*, 804 F.3d at, 614–16. As noted above, however, the *Jennings* court rejected that approach. *See* 138 S. Ct. at 843–44.

The Third and Sixth Circuits have embraced a more flexible approach to assessing the constitutionality of prolonged detentions under § 1226(c). Noting that some extended detentions under § 1226(c) could raise a "serious risk" of violating the due process rights of detainees, the Third Circuit held that § 1226(c) only "authorizes detention for a reasonable amount of time, after which the authorities must make an individualized inquiry into whether detention is still necessary to fulfill the statute's purposes." *Diop v. ICE/Homeland Sec.*, 656 F.3d 221, 231 (3d Cir. 2011). Similarly, the Sixth Circuit held that § 1226(c) authorizes the government to "detain *prima facie* removable aliens for a time reasonably required to complete removal proceedings in a timely manner," but that

8

habeas relief may be warranted if the "process takes an unreasonably long time." *Ly v. Hansen*, 351 F.3d 263, 268 (6th Cir. 2003). Both courts declined to adopt a bright-line time limitation, finding that the reasonableness of a detention is a product of the particular facts of a case and the extent to which a detention justifiably serves the goals of the statute. *Id.* at 271; *Diop*, 656 F.3d at 233. Though decided before *Jennings*, the fact-specific approach utilized in these cases appears consistent with the Supreme Court's analysis in *Jennings*.

Although the Eighth Circuit has not commented on the constitutionality of prolonged detentions under § 1226(c), courts in the District of Minnesota have assessed the reasonableness of prolonged pre-removal detentions on multiple occasions. Those courts have granted habeas relief where a noncitizen detainee remained in custody for a prolonged period of time while the government was unable to demonstrate an actual plan or timetable for future removal. *Phan v. Brott*, No. 17-cv-432 (DWF/HB), 2017 WL 4465285, at *4 (D. Minn. Sept. 14, 2017), *R.& R. adopted*, 2017 WL 4460752 (D. Minn. Oct. 5, 2017) ("Respondents do not address how much longer they expect the pre-removal proceedings to last before the Board of Immigration Appeals . . . [and] have not shown that there is a reasonable likelihood Petitioner will be repatriated in the future."); *Bah v. Cangemi*, 489 F. Supp. 2d 905, 923 (D. Minn. 2007) (Petitioner "has also provided evidence, which the government has failed to rebut, that his removal is not significantly likely in the reasonably foreseeable future . . . [and therefore] must be released from custody"); *Moallin v. Cangemi*, 427 F. Supp. 2d 908, 926 (D. Minn. 2006) ("The Court finds that, in the absence of any plan or timetable for removal, and given his already

seven months of detention by ICE beyond that deemed reasonable by the *Demore* Court . . . the Court finds that his release is warranted."). Though decided prior to *Jennings*, these cases embraced the common thread recognized by each of the courts of appeals that have considered the constitutional scope of detentions under § 1226: for a detention under that statute to be permissible, it must justifiably advance the goal of facilitating removals. If removal is unlikely, or even in reasonable doubt, the detention may offend the Constitution.

After *Jennings*, several courts in this District have addressed due process challenges to prolonged detention under § 1226(c) through careful examination of the facts of the particular case to determine whether the detention was reasonable. *See, e.g.*, *Muse v. Sessions,* No. 18-cv-0054 (PJS/LIB), 2018 WL 4466052, at *4 (D. Minn. Sept. 18, 2018); *Mohamed v. Sec'y, Dep't of Homeland Sec.*, No. 17-cv-5055 (DWF/DTS), 2018 WL 2392205, at *5 (D. Minn. Mar. 26, 2018), *R. & R. adopted*, 2018 WL 2390132 (D. Minn. May 25, 2018); *Ahmed v. Sessions*, No. 18-cv-0438 (JRT/HB), R. & R. at 12–17 (D. Minn. May 2, 2018), *dismissed per stipulation*. In each of those cases, based on the specific facts and circumstances of the case, the court determined the pre-removal detention was unreasonable. *Muse,* 2018 WL 4466052, at *4–6; *Mohamed*, 2018 WL 2392205, at *5–6; *Ahmed*, No. 18-cv-0438 (JRT/HB), R. & R. at 16.

### B.     Petitioner's Detention

Petitioner challenges his detention as violating due process.[3] The Due Process

---

[3] Petitioner also asserts that his incarceration violates the Eighth Amendment prohibition on cruel and unusual punishment. (Pet. at 6.) Respondents did not address this claim in

10

Clause of the Fifth Amendment requires that "no person shall . . . be deprived of liberty, liberty or property . . . without due process of law." U.S. Const. amend. V. Because the Fifth Amendment forbids the government from depriving any "person" of liberty, liberty or property without due process, citizens and noncitizens alike are protected by its provisions. *Mathews v. Diaz*, 426 U.S. 67, 78 (1976). "Freedom from imprisonment . . . lies at the heart of the liberty that Clause protects," *Zadvydas*, 533 U.S. at 690, and "it is well established that the Fifth Amendment entitles aliens to due process of law in deportation proceedings," *Reno v. Flores*, 507 U.S. 292, 306 (1993). "At the same time, however, this Court has recognized detention during deportation proceedings as a constitutionally valid aspect of the deportation process." *Demore*, 538 U.S. at 523.

In a recent decision from this District analyzing continued detention under § 1226(c), the Honorable Patrick J. Schiltz "follow[ed] the lead of virtually every court that has addressed the issue following *Jennings*—including two judges of this District—and [held] that a due-process challenge to § 1226(c) detention must be resolved by closely examining the facts of the particular case to determine whether the detention is reasonable." *Muse*, 2018 WL 4466052, at *3 (citations omitted). Courts utilizing this fact-specific inquiry have identified several factors that are particularly useful in

---

their response, but neither did Petitioner argue that he would be entitled to more relief under the Eighth Amendment than the Due Process Clause. Because the Court recommends that Petitioner be granted some relief on his due process claim, specifically, a bond hearing, and Petitioner has not shown he would be entitled to any more relief on his Eighth Amendment claim than on his due process claim, his Eighth Amendment claim is moot. *See Muse*, 2018 WL 4466052, at *1 n.1 (deeming Fourth Amendment claim moot where relief was granted on due-process claim and the petitioner did not argue he would be entitled to more relief under the Fourth Amendment).

11

identifying when "continued detention becomes unreasonable and the Executive Branch's implementation of § 1226(c) becomes unconstitutional unless the Government has justified its actions at a hearing inquiring into whether continued detention is consistent with the law's purposes of preventing flight and dangers to the community." *Id.* (quoting *Diop*, 656 F.3d at 232). These factors are:

> (1) the total length of detention to date, (2) the likely duration of future detention, (3) the conditions of detention, (4) delays of the removal proceedings caused by the detainee, (5) delays of the removal proceedings caused by the government, and (6) the likelihood that the removal proceedings will result in a final order of removal.

*Id.* (citing *Reid*, 819 F.3d at 500–01).[4]

Application of the relevant factors to the facts and circumstances in this case supports a conclusion that Petitioner's continued detention—without an individualized bond hearing at which an IJ could consider whether he is a danger to the community or likely to flee—would violate due process. First, with respect to the length of detention, Petitioner has been detained for nine months, which exceeds the "brief" period assumed in *Demore*. "[C]ontinued detention without inquiry into its necessity becomes more and more suspect" as detention continues past the time frame described in *Demore*. *Diop*, 656 F.3d at 234. As noted in *Muse*, detentions similar in length to Petitioner's have been

---

[4] In a footnote, Judge Schiltz acknowledged that the First Circuit withdrew its decision in *Reid* following the Supreme Court's opinion in *Jennings*. *Muse*, 2018 WL 4466052, at *3 n.3. Judge Schiltz found that the *Reid* factors established "a reasonable framework for balancing the due process interests at stake" even though they were "originally adopted in the context of reading an implicit reasonableness limitation into § 1226(c). . . ," and even though the First Circuit withdrew the *Reid* decision after the Supreme Court decided *Jennings*. *Id.* (quotation and internal quotation marks omitted).

found unreasonable. *Muse*, 2018 WL 4466052, at *4 (*citing Sajous v. Decker*, No. 18-2447, 2018 WL 2357266, at *1, 7 (S.D.N.Y. May 23, 2018) (eight months); *Jarpa v. Mumford*, 211 F. Supp. 3d 706, 710, 717 n.6 (D. Md. 2016) (ten months); *Gordon v. Shanahan*, No. 15-261, 2015 WL 1176706, *3–4 (S.D.N.Y. March 13, 2015) (eight months)). The length of Petitioner's detention weighs in favor of granting relief.

Second, courts consider how long the detention is likely to continue in the absence of judicial relief. *See Muse*, 2018 WL 4466052, at *5. In postulating when detention will end, courts take into account the anticipated duration of all removal proceedings, including administrative and judicial appeals. *See id.* (citing *Ly*, 351 F.3d at 272) ("The entire process, not merely the original deportation hearing, is subject to the constitutional requirement of reasonability."). It is impossible to predict when the BIA will rule on the DHS's appeal, but it is quite likely that the losing party will appeal to the Eighth Circuit Court of Appeals, which could extend Petitioner's detention by another year. *See id.* It could therefore be many months, perhaps more than a year, before Petitioner receives a final decision on his asylum claim. Moreover, though Petitioner has conceded removability, there is not yet a final order of removal. The second factor also favors Petitioner.

Third, courts examine the conditions of the alien's detention. *See id.* Aliens detained under § 1226(c) are subject to civil detention, not criminal incarceration. *Id.* (citing *Chavez-Alvarez v. Warden York Cty. Prison*, 783 F.3d 469, 478 (3d Cir. 2015)). "The more that the conditions under which the alien is being held resemble penal confinement, the stronger his argument that he is entitled to a bond hearing." *Id.*

13

Petitioner is being detained at the Carver County Jail. While the record is not developed on this issue, this Court assumes that Petitioner is detained with inmates who are serving criminal sentences. Respondents have not shown otherwise. Thus, this factor weighs in Petitioner's favor.

Fourth, courts consider the nature and extent of any delays in the removal proceedings caused by the alien. *See Muse*, 2018 WL 4466052, at *5. There is no evidence, nor have Respondents argued, that Petitioner has delayed the proceedings in any way. Consequently, this factor favors Petitioner.

Fifth, courts consider the nature and extent of the government's role in causing delay in the removal proceedings. *See id.* at *6. Here, though the government appealed the grant of asylum, it was within its rights to do so, and it has not engaged in any dilatory tactics. This factor therefore weighs in favor of Respondents.

Finally, courts consider whether the proceedings will end in a final removal order. *Id.* Higher likelihood of the alien's removal means a longer period of detention may be reasonable. *Id.* Like the parties in *Muse*, this factor does not favor one party over the other. While the most recent decision to be issued in Petitioner's immigration proceedings granted him asylum, an appeal of that decision is pending before the BIA. This Court is not inclined to speculate about the merits of the arguments before the BIA or the BIA's ruling. Thus, this factor is neutral and does not favor either party.

In sum, four factors weigh in Petitioner's favor, one weighs in Respondents' favor, and one favors neither party. Based on this analysis, the Court finds that the continued detention of Petitioner without an individualized bond hearing would violate his right to

due process under the Fifth Amendment. A bond hearing at which the parties may present evidence and argument concerning whether Petitioner is a danger to the community or likely to flee "will protect both [Petitioner's] rights under the Due Process Clause and the government's legitimate interest in detaining a removable alien when such detention is necessary to serve the purposes of § 1226(c)." *See Muse*, 2018 WL 4466052 at *6.

### III.  Conclusion

Accordingly, based on all the files, records, and proceedings herein, **IT IS HEREBY RECOMMENDED** that Tao J.'s Petition for a Writ of Habeas Corpus under 28 U.S.C. § 2241 [Doc. No. 1] be **GRANTED IN PART** and **DENIED IN PART**, as follows:

1. If the District Court adopts this Report and Recommendation, an immigration judge must provide Petitioner with a bond hearing within thirty days of the District Court's order. At the bond hearing, the immigration judge must make an individualized determination regarding whether detention is necessary to protect the community or to prevent Petitioner from fleeing; and

2. Petitioner's request for immediate release should be denied.

Dated: November 2, 2018         s/ *Hildy Bowbeer*
                                HILDY BOWBEER
                                United States Magistrate Judge

## NOTICE

**Filing Objections:** This Report and Recommendation is not an order or judgment of the District Court and is therefore not appealable directly to the Eighth Circuit Court of Appeals.  Under Local Rule 72.2(b)(1), a party may file and serve specific written objections to a magistrate judge's findings and recommendations within fourteen days after being served with a copy of the Report and Recommendation.  A party may respond to the objections within fourteen days after being served with a copy of the objections.  D. Minn. LR 72.2(b)(2).  All objections and responses must comply with the word or line limits set forth in LR 72.2(c)(1).